IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


WEIGHT LOSS SERVICES, LP,      :        CIVIL ACTION
et al.                         :
                               :
        v.                     :
                               :
HERBAL MAGIC, INC., et al.     :        NO. 11-3859


MEMORANDUM

McLaughlin, J.                              September 22, 2011


        The plaintiffs in this action are Weight Loss Services,
LP ("Weight Loss Services"), NU Services, LP; LATYD, LP; LA My
Way, LP; LATYDCA, LP; WLS IP, LLC; LAIP, LLC (collectively, the
"entity plaintiffs"); William Warrin, Timothy Britt, and Kristi
McKenna ("individual plaintiffs").  The plaintiffs filed their
Complaint on May 24, 2011, in the Court of Common Pleas of
Philadelphia County against Herbal Magic, Inc. ("Herbal"), and LA
Weight Loss, LLC,[1] following the sale of their weight-loss
business.  The plaintiffs brought claims for breach of contract
and breach of the individual plaintiffs' employment contracts,
and sought a declaratory judgment interpreting the terms of the
Asset Purchase Agreement ("APA") underlying the sale.  The
defendants removed the action to this Court on June 13, 2011 on
the basis of diversity.

        Before the Court are two motions: (1) the defendants'

_____

        [1] LA Weight Loss, LLC is formerly known as Nutri Magic, LLC.

Motion Under Fed. R. Civ. P. 12(b)(6) and/or 12(b)(3) to Dismiss,
or in the Alternative, to Transfer Venue ("Defs.' Mot."), filed
June 15, 2011; and (2) the plaintiffs' Motion to Amend the
Complaint ("Pls.' Mot."), filed August 1, 2011.  The Court will
grant the motion to amend the complaint, deny the motion to
dismiss, and grant the motion to transfer the case under 28
U.S.C. § 1404(a) to the United States District Court for the
Southern District of New York.

I.    Facts

        The entity plaintiffs are Pennsylvania limited
partnerships, a Pennsylvania limited liability company, and a
Delaware limited liability company with their principal places of
business located in a number of towns in eastern Pennsylvania.[2]
Mr. Warrin and Mr. Britt reside in Pennsylvania and Ms. McKenna
resides in New Jersey.  The defendant Herbal Magic, Inc. is a
Canadian corporation with its principal place of business located
in Toronto, Ontario, and the defendant LA Weight Loss, LLC is a
Delaware limited liability company with Herbal as its only
member.[3]  Compl. ¶¶ 3-16; Declaration of Craig Thompson, Ex. 2 to

_____

        [2] For diversity purposes, the citizenship of the limited
partnerships and limited liability companies is the same as each
of their partners or members (in the case of the entity
plaintiffs, Pennsylvania and New Jersey).  Zambelli Fireworks
Mfg. Co. v. Wood, 592 F.3d 412, 419-20 (3d Cir. 2010).

        [3] Similarly, LA Weight Loss, LLC, is an alien for purposes
of diversity and venue, as its only member is a Canadian entity.

-2-

Defs.' Mot. ("Thompson Decl.") ¶¶ 2-3.

        In early 2010, the defendants contacted the plaintiffs
expressing their interest in purchasing their weight-loss
business, LA Weight Loss.  Throughout 2010, the plaintiffs and
defendants negotiated a potential deal.  Representatives from
Herbal traveled to Philadelphia on numerous occasions to discuss
the terms of the agreement, including provisions for the
individual plaintiffs to continue operating the "Company Group"
after the sale of the business.[4]  The defendants conducted two
rounds of due diligence on the deal and negotiations were
completed on December 10, 2010.  The parties executed the APA on
that date.  Compl. ¶¶ 29-45.

        The APA contains two provisions that are relevant to
the instant dispute:

          13.6  Governing Law.  This Agreement shall be
          governed by and construed in accordance with
          the Laws of the State of New York.

          13.7  Consent to Jurisdiction and
          Venue . . . .
             (a)  Each party hereby irrevocably and
          unconditionally consents to submit to the
          exclusive jurisdiction of the courts of the
          United States of America located in the
          Southern District of New York and venue in

_____

Id.

    [4] The "Company Group" includes entity plaintiffs Weight Loss
Services, LP, NU Services, LP, LATYD, LP, LA My Way, LP, LATYDCA,
LP, WLSIP, LLC, and LAIP, LLC.  Compl. ¶ 10.  It appears that all
of the entity plaintiffs are business associations composed of
the individual plaintiffs.

                          -3-

> Manhattan, New York County, New York, for any
> actions, suits or proceedings arising out of
> or relating to this Agreement.

APA, Compl. Ex. A at 55.   The individual plaintiffs also executed
Employment Agreements with the defendants that contained similar
choice-of-law and forum-selection clauses.   Employment Agreement
§§ 13-14, Compl. Exs. B, C, D.   The Employment Agreements
provided that the individual plaintiffs would be employees of LA
Weight Loss, LLC for a term of three years after the transaction
closed and would be compensated at a rate of $250,000 annually,
plus benefits.   The individual plaintiffs were terminated on May
4, 2011, putatively for cause.   Compl. ¶¶ 51-53, 63-64.

     After the action was removed to this Court, the
plaintiffs made demand on the defendants for severance payments
and the value of their accrued but unused vacation days, which
the defendants refused.   The plaintiffs then filed their instant
motion seeking leave to amend their complaint to add a claim for
these amounts and liquidated damages under the Pennsylvania Wage
Payment and Collection Law ("PWPCL"), 43 Pa. Cons. Stat. § 260.1
et seq.   The defendants refused their consent to filing a second
amended complaint.   Pls.' Mem. in Support of Mot. to Amend 1-3.

## II.   Analysis

     The parties have agreed to rest on their briefs
regarding the defendants' motion whether or not the Court grants
the plaintiffs' motion; accordingly, the Court will address the

plaintiffs' motion first.

A.   <u>The Plaintiffs' Motion</u>

Where a party already has amended a pleading once, that party may amend it "only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).

The plaintiffs argue that granting their Motion to Amend before ruling on the defendants' motion "will create no delay or additional work for the Court or the parties," and that when discussing a potential stipulation to amend the complaint, "the parties contemplated that if the Motion to Amend were granted, they would simply rest upon the briefs they had already filed concerning the Motion to Dismiss, except insofar as Plaintiffs believe that the proposed Amendment affects the [governing law] in its favor, and Defendant does not."

The Court agrees.  Pursuant to the liberal standard set forth in Rule 15(a)(2), the Court will grant the Motion to Amend. The Court thus treats the defendant's motion as if it were directed at the plaintiff's proposed amended complaint, which adds claims under the PWPCL under largely the same operative facts as the first amended complaint.  The Court turns to the defendants' motion.

B.   <u>The Defendants' Motion: Preliminary Matters</u>

Because the defendants move in the alternative for dismissal under Rule 12 and transfer under 28 U.S.C. § 1404(a), the Court must determine as a threshold matter the appropriate procedural vehicle for addressing the defendants' motion.  In <u>Salovaara v. Jackson National Life Insurance Co.</u>, the United States Court of Appeals for the Third Circuit addressed the appropriate procedure for enforcing a forum selection clause. 246 F.3d 289, 297-99 (3d Cir. 2001) (per curiam).  In <u>Salovaara</u>, the Court of Appeals held that a district court may enforce such a clause through dismissal or transfer, but where a forum selection clause permits an action to be brought in a federal forum,

> it makes better sense, when venue is proper but the parties have agreed upon a not-unreasonable forum selection clause that points to another federal venue, to transfer rather than dismiss.  And if a defendant moves under § 1404(a), transfer, of course, is the proper vehicle (assuming the reasonableness of the forum selection clause).

<u>Id.</u> at 298; <u>accord</u> 14D Charles Alan Wright, Arthur R. Miller & Edwin H. Cooper, <u>Federal Practice and Procedure</u> § 3803.1 (3d ed. 2007).  The forum selection clauses in the Employment Agreements and APA permit transfer to another federal forum, and so under <u>Salovaara</u> transfer is preferable to dismissal.  The Court thus treats the defendants' motion as one for transfer under Section 1404(a).

Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Still, "transfer, as distinct from dismissal, is permissible only when venue is proper in both the original and the requested forum." Knights Collision Ctr., LLC v. AAA Mid-Atlantic, Inc., No. 09-493, 2010 WL 1141334, at *2 (E.D. Pa. Mar. 25, 2010) (citing Jumara v. State Farm Ins. Co., 55 F.3d 873, 878 (3d Cir. 1995)). The parties concede that the defendants are Canadian citizens for purposes of jurisdiction and venue. An alien may be sued in any district. 28 U.S.C. § 1391(d). Thus, venue is proper in both the Eastern District of Pennsylvania and the Southern District of New York.

C.   Enforceability of the Forum Selection Clause

The initial burden of demonstrating the need for transfer is on the defendant, and the plaintiff's choice of venue should not be lightly disturbed. The presence of a forum selection clause, however, shifts the burden to the plaintiff, who "bears the burden of demonstrating why they should not be bound by their contractual choice of forum." Jumara, 55 F.3d at 879-80. Forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances," which requires a "strong showing" by the plaintiff. M/S Bremen v.

-7-

Zapata Off-Shore Co., 407 U.S. 1, 10, 15 (1972).  Enforcing a
forum selection clause is unreasonable where the clause has been
procured by "fraud or overreaching," or if the resisting party
shows that "trial in the contractual forum will be so gravely
difficult and inconvenient that he will for all practical
purposes be deprived of his day in court."  Id. at 15, 18.  The
plaintiffs do not contend that either the APA or the Employment
Agreements were obtained through fraud or overreaching, nor do
they argue that they would be deprived of their day in court if
the case were transferred.  The Court finds that the forum
selection clauses in the Employment Agreements and APA are
enforceable.

     D.   Section 1404(a) Balancing Test

       The Jumara court added a number of factors that a
district court should consider when deciding a motion to
transfer, elaborating on the Section 1404(a) standard which
permits transfer "for the convenience of parties and witnesses"
and "in the interest of justice."  These factors are divided into
private and public interests.  The private interests include:

           plaintiff's forum preference as manifested in
           the original choice; the defendant's
           preference; whether the claim arose
           elsewhere; the convenience of the parties as
           indicated by their relative physical and
           financial condition; the convenience of the
           witnesses--but only to the extent that the
           witnesses may actually be unavailable for
           trial in one of the fora; and the location of

>           the books and records (similarly limited to
>           the extent that the files could not be
>           produced in the alternative forum).

Jumara, 55 F.3d at 879.  The public interests include:

>           the enforceability of the judgment; practical
>           considerations that could make the trial
>           easy, expeditious, or inexpensive; the
>           relative administrative difficulty in the two
>           fora resulting from court congestion; the
>           local interest in deciding local
>           controversies at home; the public policies of
>           the fora; and the familiarity of the trial
>           judge with the applicable state law in
>           diversity cases.

Id. at 879-80.

        A forum selection clause represents the preferences of
the parties as to a convenient forum, and "[a]lthough the
parties' agreement should not receive dispositive weight, it is
entitled to substantial consideration."  Id. (citing Stewart
Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29-31 (1988)).  Indeed, a
forum selection clause is "a significant factor that figures
centrally" in the Court's analysis under Section 1404(a),
Stewart, 487 U.S. at 29.  Still, the statute demands an
"individualized, case-by-case consideration of convenience and
fairness."  Van Dusen v. Barrack, 376 U.S. 612, 622 (1964).  The
court thus turns to the multifactor test set forth in Jumara,
keeping in mind the central role of the valid forum selection
clause.

1.   <u>Private Interests</u>

Although the plaintiffs filed the action in the Court of Common Pleas of Philadelphia County, this choice is not entitled to the deference ordinarily afforded it because a forum selection clause is present, reflecting the plaintiffs' contractual choice.  <u>Jumara</u>, 55 F.3d at 880 (citing <u>In re Ricoh</u>, 870 F.2d 570, 573 (11th Cir. 1989) (remand of <u>Stewart</u>)).  The defendants have demonstrated their preference for the Southern District of New York through their execution of the forum selection clauses and their instant motion to transfer.  The plaintiffs repeatedly emphasize that most of the events giving rise to their claims occurred in Philadelphia, although some did occur abroad, and thus this factor weighs only marginally against transfer.

The plaintiffs have not averred that their physical or financial condition precludes them from litigating the matter in the Southern District of New York.  Further, the plain language of the transfer statute requires the Court to consider the convenience of all parties, not simply the party resisting the motion to transfer.  Although the plaintiffs are located in the Philadelphia area, the defendants are located in Ontario, Canada. The Southern District of New York and Eastern District of Pennsylvania are roughly 100 miles apart, and thus the difference in convenience between the fora is negligible.

With respect to the final two private factors, the Court is precluded from considering them on the instant motion because the plaintiff concedes that neither witnesses nor books and records would be unavailable if the case were litigated in the Southern District of New York.  The Court finds that the private interests are at least neutral and likely weigh in favor of transfer.

2.  <u>Public Interests</u>

The public factors relating to enforceability, administrability, and practicality do not weigh heavily in either direction in this case.  The District Court for the Southern District of New York is no less capable than this Court in handling commercial disputes efficiently.

The plaintiffs argue that local interests militate in favor of the Court hearing their "local controversy" and denying the motion to transfer.  Pls.' Oppn. to Defs'. Mot. to Dismiss or Transfer ("Pls.' Oppn.") 9.  The Court acknowledges Pennsylvania's strong interest in providing a forum for its citizens to litigate their disputes.  <u>See, e.g.</u>, <u>Elbeco, Inc. v. Estrella de Plato Corp.</u>, 989 F. Supp. 669, 678 (E.D. Pa. 1997).  Still, the Court is reluctant to characterize this case, with amounts in controversy well in excess of a million dollars, as purely local.  By the plaintiffs' own admission, the business at the heart of the dispute is "one of the best-known and

historically most successful weight loss programs in the Americas," and includes "over 800 retail diet stores that were either corporately owned and operated or operated through franchisees throughout the United States, Canada and Costa Rica." Compl. ¶ 21  The individual plaintiffs, at least for a time, were involved in marketing efforts and correspondence with these franchisees.  Id. ¶¶ 55-57.  This controversy thus has a broader scope than the case the plaintiff cites on this point in opposition to the defendants' motion.  See Pls.' Oppn. 9 (citing Banket v. GC America, Inc., No. 05-576, 2005 WL 2600204, at *6 (E.D. Pa. Oct. 11, 2005) (refusing to transfer an Age Discrimination in Employment Act case)).

    Similarly, the plaintiffs argue that the addition of claims under the PWPCL in their Amended Complaint renders the Court's familiarity with Pennsylvania law a factor favoring retention of the case.  Assuming that this is so, the fact that the parties have actively selected New York law to govern the APA and Employment Agreements weighs equally if not overwhelmingly in favor of transfer.

    Further, the public policy of New York permits parties to subject their disputes to their jurisdiction in choice-of-law as well as forum-selection matters.  See N.Y. Gen. Obl. Law §§ 5-1401, 5-1402 (permitting choice of New York law in contracts "whether or not such contract . . . bears a reasonable relation

-12-

to this state" and allowing forum selection clauses where New York law governs). The courts of the Southern District of New York are more familiar with the New York state law that governs the bulk of this dispute. The Court therefore concludes that the public interests are at least neutral with respect to transfer, and probably weigh in favor of it.

The existence of a valid forum selection clause imposes upon the plaintiff the burden of demonstrating why it should not be enforced. The Court finds that the plaintiff has not made the strong showing required to meet that burden. The Court will transfer the case to the United States District Court for the Southern District of New York.

A separate order follows.